**No. 25-11060**

# In the United States Court of Appeals for the Fifth Circuit

PETER SABINE, ON BEHALF OF HIS CHILD, F.S., A MINOR,

*Plaintiff-Appellant*,

*v.*

CARROLL INDEPENDENT SCHOOL DISTRICT, THROUGH ITS BOARD OF TRUSTEES; DOE DEFENDANTS 1-20, INCLUSIVELY,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Case No. 2:24-cv-01225-O

## BRIEF OF APPELLANT

KEITH ALTMAN, ESQ.
Michigan Bar No. P81702
THE LAW OFFICE OF KEITH ALTMAN
30474 Fox Club Drive
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1) **Plaintiff-Appellant:**

Peter Sabine, on behalf of his child, FS., a minor.

2) **Defendants-Appellees:**

Carroll Independent School District, through its Board of Trustees; and DOE Defendants 1-20, inclusively.

3) **Counsel for Plaintiff-Appellant:**

Keith Altman, Esq. from The Law Office of Keith Altman.

4) **Counsel for Defendants-Appellees:**

Timothy Davis, Esq. from Jackson Walker.

*/s/ Keith Altman*
Keith Altman, Esq.
*Counsel for Plaintiff-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant requests oral argument as it is believed to significantly aid the decisional process in this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........ i

STATEMENT REGARDING ORAL ARGUMENT ........ ii

TABLE OF CONTENTS ........ iii

TABLE OF AUTHORITIES ........ v

JURISDICTIONAL STATEMENT ........ 1

ISSUES PRESENTED ........ 2

STATEMENT OF THE CASE ........ 3

SUMMARY OF THE ARGUMENT ........ 5

ARGUMENT ........ 6

I. Standard of Review ........ 6

II. The District Court's Reliance on *Covington* Was Misplaced ........ 6

III. The District Court Erred in Dismissing Plaintiff's §1983 Claim by Failing to Recognize That Deliberate Indifference Can Constitute a Constitutional Violation Under the State-Created Danger Theory ........ 10

IV. The District Court Erred in Finding Insufficient Allegations of Municipal Liability Under § 1983 ........ 14

V. The District Court Abused Its Discretion in Denying Leave to Amend as Futile ........ 15

CONCLUSION ........ 16

CERTIFICATE OF SERVICE ..................................................................17

CERTIFICATE OF COMPLIANCE ..........................................................18

## TABLE OF AUTHORITIES

**Cases**

*Becerra v. Asher*, 105 F.3d 1042 (5th Cir. 1997) ....................................................10

*DeShaney v. Winnebago Cty.*, 489 U.S. 189, 200 (1989)..........................................7

*Doe ex rel. Magee v. Covington Cty. Sch. Dist.,* 96 So. 3d 742 (Miss. App. 2012)..7

*Doe v. Covington Cty. Sch. Dist*., 675 F.3d 849, 860 (5th Cir. 2012).......... 9, 10, 15

*Doe v. Hillsboro ISD*, 113 F.3d 1412, 1415 (5th Cir. 1997) ..................................12

*Fitzgerald v. Barnstable Sch. Comm.,* 555 U.S. 246, 129 S. Ct. 788 (2009) ..........14

*Great Plains Tr. Co. v. Morgan Stanley*, 313 F.3d 305, 329 (5th Cir. 2002)..........16

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) ..........................................................................6

*Johnson v. Halstead*, 916 F.3d 410 (5th Cir. 2019).................................................15

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) .............................13

*Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996).......................................................13

*Saenz v. Heldenfels Bros.*, 183 F.3d 389, 392 (5th Cir. 1999) ...............................13

*Sauceda v. City of San Benito*, 78 F.4th 174 (5th Cir. 2023) .................................14

*Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539 (5th Cir. 1997).......... 10, 12

*Youngberg v. Romeo*, 457 U.S. 307, 315–16 (1982) .................................................8

**Statutes**

28 U.S.C. §1291 .........................................................................................................1

28 U.S.C. S1331 ........................................................................................ 1

42 U.S.C. §1983 ...................................................................................... 10

**Rules**

Fed. R. Civ. P. 15(a)(2) ........................................................................ 15

## JURISDICTIONAL STATEMENT

The District Court maintained subject matter jurisdiction under 28 U.S.C. §1331[1], which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

This Honorable Court maintains jurisdiction to hear the present appeal under 28 U.S.C. §1291[2]. The Appellant timely appealed by filing a notice of appeal within 30 days of the District Court's Final Judgment dated September 2, 2025.

---

[1] 28 U.S.C. S1331; ROA.109
[2] 28 U.S.C. §1291

## ISSUES PRESENTED

1. Whether the district court erred in dismissing Plaintiff's §1983 substantive due process claim by failing to recognize that deliberate indifference to known risks of student-on-student sexual assault can constitute a constitutional violation under the state-created danger theory.

2. Whether the district court erred in finding that Plaintiff failed to state a plausible claim for municipal liability under §1983 where the complaint alleged specific facts showing CISD's policies, customs, and deliberate indifference were the moving force behind the constitutional violations.

3. Whether the district court erred in holding that a public school has no constitutional duty to protect a non-verbal, severely disabled special-education students from repeated and escalating sexual assaults occurring in a supervised classroom environment.

4. Whether the district court abused its discretion in denying leave to amend as futile when Fifth Circuit precedent has not definitively rejected all theories of liability for student-on-student assaults in public schools.

## STATEMENT OF THE CASE

At all times relevant to this litigation, F.S. was a special education student enrolled at Carroll Middle School within the Carroll Independent School District ("CISD").[3] F.S. is a profoundly vulnerable child who suffers from attention deficit disorder, developmental delays, and autism.[4] He is non-verbal and relies on alternative methods of communication, such as vocalizations and his iPad, to express his needs and emotions.[5] F.S. requires heightened supervision and safeguarding due to his disabilities, and he depends on the adults around him—teachers, aides, and administrators—for protection, advocacy, and care. Yet, during the 2023–2024 school year, F.S. was subjected to repeated and escalating sexual abuse by another male student, N., who also has special needs.[6] These assaults occurred within the sensory room—a space specifically designed to provide comfort and safety for students like F.S.—and took place on at least thirteen separate occasions, often while F.S. was left unsupervised or ignored by staff.[7]

Despite his limited ability to speak, F.S. tried desperately to alert his teachers and aides to the abuse. He raised the volume on his iPad, vocalized distress phrases like "A-hup," "Ow," and "No," and physically moved around the classroom seeking

[3] ROA.006
[4] ROA.006
[5] ROA.006
[6] ROA.006-011
[7] ROA.006-011

help.[8] Instead of receiving protection, F.S. was repeatedly reprimanded for being "too loud" or disruptive. On multiple occasions, staff misinterpreted his cries for help or failed to intervene altogether. The abuse ranged from inappropriate touching and dry humping to forced genital contact and masturbation in front of F.S., leaving him physically violated and emotionally shattered. In one instance, N. ejaculated on a pillow that F.S. regularly used.[9] In another, N. manipulated F.S.'s hand onto his own genitals and praised him afterward. F.S. was visibly distressed, attempting to shield himself with pillows and retreating into corners of the sensory room, yet no adult came to his aid.[10]

The school failed to notify F.S.'s family of the assaults until May 17, 2024, after the thirteenth documented incident.[11] By then, video footage only extended back to February, leaving the full scope of abuse unknown.[12] When F.S.'s mother was finally shown the footage, she immediately pressed charges.[13] Yet even in the aftermath, CISD officials discouraged a Title IX investigation and allowed F.S. to remain in proximity to his abuser, compounding his trauma.[14] F.S. did not return to school for the remainder of the academic year and missed the summer portion of his

---

[8] ROA.006-011
[9] ROA.006-011
[10] ROA.006-011
[11] ROA.011
[12] ROA.011
[13] ROA.012
[14] ROA.013

extended school year.[15] He now suffers from anxiety, depression, and emotional withdrawal.[16] He has sought counseling and continues to endure harassment within CISD's school grounds.[17]

F.S.'s story is not just one of institutional failure—it is a heartbreaking account of a child with disabilities who was repeatedly harmed while under the care of those entrusted to protect him. The adults in his classroom ignored his cries, misread his pleas, and failed to act. The school district neglected its duty to safeguard a student who could not speak for himself, and in doing so, allowed his suffering to continue unchecked. F.S. deserves justice, accountability, and the assurance that no other child will be left so vulnerable again.

## SUMMARY OF THE ARGUMENT

The district court committed reversible error by dismissing Plaintiff's §1983 claim without properly analyzing whether CISD's deliberate indifference to known risks created or enhanced the danger to F.S. While the Fifth Circuit has not explicitly adopted the state-created danger theory, it has not rejected it, and the theory provides a viable path for liability where government actors affirmatively create or enhance dangers to constitutional rights.

[15] ROA.012
[16] ROA.013
[17] ROA.013

The district court also erred in finding insufficient allegations of municipal liability. Plaintiff's complaint alleges specific facts showing CISD's inadequate supervision policies, failure to train employees to recognize and respond to sexual assault, and deliberate indifference to known risks were the moving force behind the constitutional violations.

The district court erred in finding that public schools have no constitutional duty to protect a non-verbal, severely disabled special-education students from repeated and escalating sexual assaults occurring in a supervised classroom environment.

Finally, the court abused its discretion in denying leave to amend as futile. The legal landscape regarding §1983 claims in school settings continues to evolve, and Plaintiff should have been afforded the opportunity to amend his pleadings to address any deficiencies.

## ARGUMENT

### I. Standard of Review

The denial of a motion to dismiss is subject to de novo review.[18]

### II. The District Court's Reliance on *Covington* Was Misplaced

[18] *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018)

The district court's reliance on *Doe ex rel. Magee v. Covington Cty. Sch. Dist.* was misplaced. *Covington* involved different factual circumstances and did not foreclose all theories of liability for student-on-student assaults.[19] Unlike *Covington*, this case involves specific allegations of deliberate indifference and affirmative conduct that created or enhanced the danger to F.S. – a nonverbal severely disabled special education student.

The district court treated *Covington* as if it created a categorical rule that public schools can never owe a constitutional duty to protect students from private violence. But *Covington* itself emphasized that the special relationship inquiry is fact specific, and that custody exists when the State restrains an individual's liberty such that they cannot care for themselves.[20]

F.S.'s severe disabilities and dependence on adult supervision created a custodial relationship far beyond ordinary schooling. Unlike the typical student in *Covington*, F.S. is nonverbal, autistic, developmentally delayed, unable to communicate danger except through limited distress signals, and unable to leave the special education room or protect himself physically. CISD was well acquainted with the needs of F.S. and the standard of care that it owned F.S. as they engaged in the special education process of addressing, forming, and implementing an

---

[19] *Doe ex rel. Magee v. Covington Cty. Sch. Dist.,* 96 So. 3d 742 (Miss. App. 2012)
[20] *DeShaney v. Winnebago Cty*., 489 U.S. 189, 200 (1989)

individualized education plan for F.S. to be undertaken while he was in the care of CISD.

The record shows that F.S. affirmatively attempted to communicate distress during eight of the thirteen assaults—turning up his iPad volume, saying "a hup," "no," and "ow."[21] Staff ignored him, reprimanded him, or misinterpreted his pleas for help. A child who cannot speak, cannot flee, and cannot summon help is the very definition of an individual whose liberty is restrained in a way that triggers constitutional protection.[22] Developmentally disabled individuals are owed affirmative protection because they cannot protect themselves.[23] If these individuals cannot rely on those that are entrusted with their care throughout the school day to protect their constitutional rights – who have we become as a society?

The sensory room is a small, enclosed, isolated room within the special education classroom.[24] The special needs classroom itself is a self-contained classroom. F.S. was repeatedly allowed in the sensory room alone with N., despite both boys' known vulnerabilities, and F.S.'s pleas for help.[25] F.S. was forced to remain in the sensory room until he was advised that he was able to leave by district staff.[26]

---

[21] ROA.006-011
[22] *Youngberg v. Romeo*, 457 U.S. 307, 315–16 (1982)
[23] *Id.*
[24] ROA.006
[25] ROA.006-011
[26] ROA.006-011

During Occurrence #10, F.S. tried to flee the sensory room multiple times, but staff required him to return because "that is where he was supposed to be at that time of day."[27] This is not a free roaming educational environment. It is a controlled, enclosed space where staff dictate movement. This level of control is materially different from the open classroom environment in *Covington* and far closer to the custodial settings recognized in *Youngberg* and *DeShaney*.

The district court ignored the Fifth Circuit's acknowledgment that special education settings may create custody. *Covington* expressly noted that the special relationship inquiry does not turn on labels like "school," but on the degree of restraint.[28] The district court failed to engage with the actual facts showing that CISD exercised near total control over F.S.'s physical movement, communication, and safety. This was a custodial relationship creating additional safeguards for F.S.

The *Covington* court explicitly noted that it was not addressing whether the state-created danger theory might apply in different circumstances.[29] The facts alleged here—including CISD's active discouragement of F.S.'s attempts to report the abuse—distinguish this case from the passive failure to protect at issue in Covington.

---

[27] ROA.010
[28] *Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 860 (5th Cir. 2012)
[29] *Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849 (5th Cir. 2012)

## III. The District Court Erred in Dismissing Plaintiff's §1983 Claim by Failing to Recognize That Deliberate Indifference Can Constitute a Constitutional Violation Under the State-Created Danger Theory

To state a claim under §1983, a plaintiff must allege "(1) a violation of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law."[30] The Fourteenth Amendment protects individuals' liberty interest in bodily integrity from state-occasioned damage.[31]

While the Fifth Circuit has not explicitly adopted the state-created danger theory, it has not rejected it either.[32] The theory recognizes that government actors can violate constitutional rights by affirmatively creating or enhancing dangers to individuals, even when the immediate harm comes from private actors.[33]

Under this theory, liability attaches when: (1) the state actor created or increased a danger to the plaintiff; (2) the state actor acted with deliberate indifference to a known or obvious consequence of his action; and (3) there is a direct causal link between the state actor's conduct and the harm.[34]

---

30 42 U.S.C. §1983
31 *Becerra v. Asher*, 105 F.3d 1042 (5th Cir. 1997)
32 *Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849 (5th Cir. 2012)
33 *Id.*
34 *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539 (5th Cir. 1997)

Plaintiff's complaint demonstrates that CISD's actions and policies created and enhanced the danger to F.S. The school district established the sensory room as a safe space for special education students but failed to implement adequate supervision. The district and its staff knew or should have known that abuse was taking place, escalating and increasing in severity. They failed to monitor the classroom with the teaching staff that was present in the classroom and responsible for the students or though the television monitoring program that maintained views of both the larger special needs classroom as well as the smaller sensory room. More critically, when F.S. repeatedly attempted to communicate his distress through his alternative communication methods, school employees actively discouraged his efforts by telling him to be quiet and reprimanding him for making noise.

This pattern of deliberate indifference went beyond mere failure to protect. By silencing F.S.'s attempts to report the abuse and maintaining inadequate supervision policies, CISD affirmatively created conditions that enabled the continued sexual assaults. The assaults were so egregious that the Department of Justice ("DOJ") had to step in to investigate as N. was videotaping the sexual assaults on his iPad.

CISD demonstrated deliberate indifference by maintaining supervision policies that were obviously inadequate for protecting vulnerable special education

students.[35] The complaint provides detailed facts showing that multiple school employees were present during the incidents but failed to supervise the sensory room, despite F.S.'s obvious distress signals.

The deliberate indifference standard requires "proof that a municipal actor disregarded a known or obvious consequence of his action."[36] Here, CISD's employees repeatedly observed F.S.'s distress signals but chose to silence him rather than investigate. This constitutes a conscious disregard of an obvious risk to F.S.'s safety and constitutional rights.

Even if no special relationship existed, liability attaches where the State affirmatively places a plaintiff in danger.[37] The district court incorrectly concluded that Appellant alleged only omissions. The record shows the opposite.

CISD repeatedly and affirmatively placed F.S. in danger. CISD did not merely fail to act. It took affirmative steps that increased the danger to F.S. such as repeatedly placing F.S. alone with N. in the sensory room, despite knowing both boys required constant supervision; ignoring F.S.'s distress signals—including "a hup," "no," "ow," and increased iPad volume—during at least eight assaults; reprimanding F.S. for making noise during assaults (Occurrences #11 and #12); failing to check the sensory room even when staff walked directly past it (Occurrence

[35] *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539 (5th Cir. 1997)
[36] *Id.*
[37] *Doe v. Hillsboro ISD*, 113 F.3d 1412, 1415 (5th Cir. 1997)

#8); requiring F.S. to return to the sensory room during Occurrence #10 even as he attempted to escape N.'s advances; allowing N. to enter the sensory room unsupervised repeatedly, even after he had been observed masturbating in the room (Occurrences #6, #7, #8, #9).[38]

These are affirmative acts that created and exacerbated the danger.

F.S. was a known, identifiable victim. The district court held that Plaintiff failed to allege a "known victim." That conclusion is incompatible with the facts: F.S. repeatedly signaled distress; staff repeatedly observed N. behaving sexually in the sensory room; staff repeatedly left the boys alone despite knowing both required supervision; staff reprimanded F.S. for the very behaviors he used to communicate danger. A child who is nonverbal, visibly distressed, attempting to flee, and repeatedly signaling for help is a known victim under Saenz.[39]

CISD's conduct fits squarely within the state-created danger doctrine as recognized by other circuits. Other circuits have found state created danger where schools placed a vulnerable student with a known aggressor, ignored escalating warning signs, or failed to intervene despite obvious danger.[40]

---

[38] ROA.006-013

[39] *Saenz v. Heldenfels Bros.*, 183 F.3d 389, 392 (5th Cir. 1999)

[40] *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998); *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996).

## IV. The District Court Erred in Finding Insufficient Allegations of Municipal Liability Under § 1983

Municipal liability under § 1983 requires proof of three elements: "(1) the existence of an official policy or custom; (2) a policymaker who can be charged with actual or constructive knowledge of the policy; and (3) a constitutional violation whose moving force is the policy or custom."[41] Municipal liability for failure to train or supervise attaches when "the failure reflects a municipality's deliberate or conscious choice such that the choice is a policy."[42]

Plaintiff's complaint alleges specific facts demonstrating CISD's inadequate supervision policies and customs. The repeated pattern of inadequate supervision across multiple incidents, combined with the district's failure to train employees to recognize and respond to signs of sexual assault, establishes a custom of deliberate indifference.

The complaint alleges that "CISD teachers and administrators failed to supervise the special education students" and failed to come to F.S.'s aid when reporting the sexual assaults and instead reprimanded him for attempting to notify teachers. These allegations, taken as true, demonstrate a pattern of conduct that rises to the level of an official custom or policy.

---

[41] *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 129 S. Ct. 788 (2009)
[42] *Sauceda v. City of San Benito*, 78 F.4th 174 (5th Cir. 2023)

CISD's inadequate supervision policies and failure to train employees were the direct cause of the constitutional violations suffered by F.S. The complaint alleges that proper supervision and training would have prevented the repeated assaults. The district's deliberate choice to maintain inadequate policies, despite the obvious risks to vulnerable students, was the moving force behind F.S.'s injuries.

## V. The District Court Abused Its Discretion in Denying Leave to Amend as Futile

Federal Rule of Civil Procedure 15(a)(2) provides that courts should "freely give leave [to amend] when justice so requires."[43] Leave to amend should be denied only when the amendment would be futile, meaning the amended complaint would fail to state a claim upon which relief can be granted.[44]

The district court's finding of futility was based on an overly restrictive interpretation of Fifth Circuit precedent. While the Fifth Circuit has not explicitly adopted the state-created danger theory, it has not rejected it either.[45] The legal landscape regarding §1983 claims in school settings continues to evolve, and Plaintiff should have been afforded the opportunity to amend his pleadings to address any perceived deficiencies.

---

[43] Fed. R. Civ. P. 15(a)(2)
[44] *Johnson v. Halstead*, 916 F.3d 410 (5th Cir. 2019)
[45] *Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849 (5th Cir. 2012)

Moreover, Plaintiff's complaint already contains sufficient factual allegations to state a plausible claim under the state-created danger theory. The detailed allegations of CISD's deliberate indifference and the causal connection between the district's policies and F.S.'s injuries provide a sufficient basis for relief. The Fifth Circuit disfavors dismissals with prejudice before discovery where additional facts could cure deficiencies.[46]

## CONCLUSION

For these reasons, Plaintiff-Appellant respectfully requests that this Court reverse the District Court's order of dismissal and remand the case for further proceedings.

Dated: January 30, 2026

Respectfully Submitted,

*/s/ Keith Altman*

Keith Altman, Esq.
Michigan Bar No. P81702
THE LAW OFFICE OF KEITH ALTMAN
30474 Fox Club Drive
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*Counsel for Plaintiff-Appellant*

[46] *Great Plains Tr. Co. v. Morgan Stanley*, 313 F.3d 305, 329 (5th Cir. 2002)

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on January 30, 2026, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/ Keith Altman*
Keith Altman, Esq.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because:

- this brief contains 3,022 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2. This brief also complies with the typeface requirements of FED. R. APP. P. 32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 with a 14-point font named Times New Roman;
- the footnotes have been prepared in a proportionally spaced typeface using Microsoft Word 2019 with a 12-point font named Times New Roman.

Dated: January 30, 2026

*/s/ Keith Altman*
Keith Altman, Esq.
*Counsel of record for Plaintiff-Appellant*